## Commonwealth *v.* Delaware, Lackawanna & Western Railroad Company, Appellant.

*Taxation—Capital stock of corporation—Coal on hand—Mining companies.*

The value of coal which a Pennsylvania mining corporation has on hand in other states, and which it has shipped to such other states for the purpose of sale, and not to serve any permanent corporate purpose, cannot be deducted in determining the value of the capital stock of such corporation for the purpose of taxation; and it is immaterial that taxes were assessed and paid on the coal in the states where it was stored awaiting sale, if it does not appear whether such taxes were paid for state, local or municipal purposes, and it appears that they were paid without contest.

Argued June 1, 1903.   Appeal, No. 18, May T., 1901, by defendant, from judgment of C. P. Dauphin Co., Commonwealth Docket, 1900, No. 213, for plaintiff on case tried by court without a jury in suit of Commonwealth v. Delaware, Lackawanna & Western Railroad Company.   Before MITCHELL, DEAN, FELL, BROWN, MESTREZAT and POTTER, JJ. Affirmed.

Appeal from tax settlement.

WEISS, J., found the facts among others as follows:

4. The facts agreed upon by counsel for the commonwealth and the company are set forth in the affidavits of W. H. Truesdale, president, and Fred. F. Chambers, the secretary and treasurer of the company, and, in so far as they relate to the reserved question, are as follows, viz:

" Under powers conferred by special charter previous to the adoption of the present constitution of Pennsylvania, the Delaware, Lackawanna and Western Railroad Company is largely engaged in the mining and purchasing of anthracite coal in Pennsylvania, nearly all of which coal it transports to points without said state and there sells.   By far the greater part of this coal is transported from the mines for immediate delivery at points in other states, and is not kept or held in stock in said other states longer than is necessary for the purpose of transferring possession from this company to the purchasers ; but at certain points in other states, as, for instance, at Buffalo, N. Y., and at Chicago, Ill., the company keeps constantly on

hand a stock of coal for purposes of sale, the same being stored in yards or upon docks maintained by the company for that purpose. The coal thus on hand awaiting sale between the first and fifteenth days of November, 1899, the date when the company's capital stock is required by law to be appraised for taxation, was of the value of not less than $1,702,443, and was included in the valuation of the company's capital stock upon which tax was charged in the auditor general's account. The coal thus on hand at that date was approximately the amount usually kept in stock at such points. The said coal when shipped from Pennsylvania was destined to said points in other states, with no intention of ever returning the same to Pennsylvania. On the contrary, said coal was intended to, and did, become part of the general mass of property in said other states, and the company is there annually taxed upon or in respect to the same, and was so taxed for 1899. When the coal thus kept in stock in the states of New York, Illinois, and other states outside of Pennsylvania is sold, the proceeds are returned to the company's treasury in the city and state of New York.

"In 1899 the company sold and delivered coal at points outside of the state of Pennsylvania of the aggregate value of not less than $18,587,258, but this was either contracted for before it left the mines or delivered upon, or within a comparatively short time after its arrival at the points in other states to which it was to be delivered. What I have said above was with reference only to coal kept in stock at points outside of Pennsylvania for purposes of sale."

5. The corporation defendant is authorized by law to transact business and to hold lands in other states for depot, wharfage and coal yard accommodations and to make such agreements and contracts with corporations and individuals of other states as may be necessary and expedient for the transporting and vending of coal mined and purchased by it, and defendant is also authorized to have and maintain its general office and place of business and to hold its stockholders' meeting, in the state of New York, and to have as president, directors and other officers, nonresidents of the state of Pennsylvania. The company is taxable upon the value of the property represented by its capital stock, and not upon the amount of the latter.

Being a tax on property it follows that the state cannot tax

that part or portion of its property, which is permanently located beyond her territorial limits, of which is " intended permanently to serve any corporate purpose of its owner."

The coal was here as real estate, until it was mined. It became, and remained, personal property from that time. As such it entered into the value of capital stock. It was transported to points in other states for temporary storage and immediate sale. It is not a thing used in the prosecution of the business of the company. It serves no corporate purpose. It is a commodity dealt in by the company. The product which is taken out of the earth in this state, and which, as such, entered into the measure and determination of the value of the company's property for taxable purposes, is removed out of the state for the sole purpose of a ready sale. It may be, and doubtless was, transported from there to other states and places after it was sold. But wherever sold, the proceeds eventually came back to the state from whence the mined product was shipped for the purpose of sale, and where its officers and treasurer, in contemplation of law, reside.

The coal was taken from its taxable habitat, imbued with the nomadic instinct, ordained to wander far and wide through other states seeking and finding a commercial mart, and, in its changed form, sent on the pilgrimage back to its original domicile.

It is this itinerant trait which likens the case to the dredges, tugs and scows in Commonwealth v. American Dredging Co., 122 Pa. 386, employed beyond, but taxed within, the boundaries of this state, and subjects the coal to taxation in the parent jurisdiction, from whence it ought to go exempt from the imposition of further burdens elsewhere for state purposes for the year specified.

That cannot be said to be permanent or have fixity which is voyaged from place to place for a market. Horses, cattle and other movable chattels, when transported to another jurisdiction, are ordinarily kept and used there for some purpose attendant upon the pursuit or business of the owner. They may with propriety be said to be located there permanently.

But coal mined or unmined, as well as the proceeds of the sale of the product, are protected by the laws of this state, and must accordingly respond to the burden of taxation in this state. Protection and taxation are correlated.

It is testified to and not contradicted, that the coal for the tax year 1899 was intended to, and did become, part of the general mass of property in the other states, "and the property is there annually taxed upon, or in respect of, the same, and was so taxed in 1899."

All taxes assessed against the company for 1899 in other states on coal located there have been paid, according to what the secretary of the company says he believes, and so far as he can now recall, but it does not appear that said taxes were not for local or municipal purposes and not for state purposes, and it does appear that the taxes laid were paid without contest.

The company may thrive better by resisting the collection of a tax on coal in those states into which it has been shipped than here, where the property in question is accorded protection, and where it enters into the value of the capital stock, and is primarily taxable.

Taxation there would not suspend the right to tax property located here and forming part of a mass which, as well before severance from the land as after, and, of course, prior to its transportation elsewhere, entered into and affected the value of the capital stock, and which was so deposited elsewhere, for a mere temporary and not a permanent purpose. Primary jurisdiction to tax the coal attached here and its voluntary carriage into other states for sale, does not detach it, even if by law of those states it is again taxable there.

What the Supreme Court in Brown v. Houston, 114 U. S. 622 (5 Sup. Ct. Repr. 1091), decided, as we understand it, is, that a tax laid by the state of Louisiana, pursuant to a general law, upon coal transported into that state from Pennsylvania, where a tax was theretofore laid upon capital stock representing the same property and paid for the same year, was not violative of the provisions of the constitution of the United States relative to duties on imports or exports and regulating commerce among the several states.

Mr. Justice BRADLEY, p. 623, says: "It was not a tax imposed upon the coal as a foreign product, or as the product of another state than Louisiana, nor a tax imposed by reason of the coal being imported or brought into Louisiana, nor a tax imposed whilst it was in a state of transit through that state to some other place of destination, and was put up for sale."

It was " an exercise of local administration under the general taxing power, which, though it may incidentally affect the subjects of commerce, is entirely within the power of the state until congress shall see fit to interfere and make express regulations on the subject."

There was no assessment of a tax upon the real estate lying beyond the limits of the state, upon which the coal was placed, because it was permanently located beyond the taxing jurisdiction of the commonwealth, and never subject to the visatorial power of the auditor general or any other authority.

But the dismantling of real estate situate in this state, and the transportation of the severed fragments into other states for the avowed purpose of sale, even though placed there before the actual valuation and assessment was paid thereon, is quite a different proposition.

The company is required not only to estimate and appraise its capital stock at its actual value in cash between the first and fifteenth days of November of each year, but it must be not less " than the average price the said stock sold for during the year ending with the first Monday of November," 1899, " and not less than the price or value indicated or measured by net earnings or by the amount of profit made and either declared in dividends or carried into surplus or sinking fund."

After it leaves the parent ledge or vein, it is a constantly moving commodity, never the same in quantity or identity during any week, month, year, or years, going to its dumping pile to-day, departing, to-morrow—fugitive ever until it reaches the torch.

By the comity which obtains among the several states and which has the force and sanction of law, property situate as this is, ought to be taxed by the sovereign in whose domain it is produced, and who granted the franchise to produce it; and the product transported for sale to other states ought to be exempt from further taxation there for state purposes.

This rule is also in accord with the dictates of equity, for by it the value of the product as represented by the capital stock can be ascertained with almost mathematical exactness.

In Commonwealth v. Delaware, etc., Railroad Co. 145 Pa. 96, the Supreme Court, commenting upon the case of Commonwealth v. American Dredging Company, 122 Pa. 386, says:

" The dredges which were the subjects of the controversy were taxable at the situs of the company, for the reason that, although wholly used outside of the commonwealth, they did not remain in any one place long enough to render them liable to taxation there."

Having reached the conclusion that the shipment of the coal into other states for the purpose of sale does not ·give it the character of permanence there, so as to exempt it from taxation here, and being also of the opinion that even if the testimony had actually disclosed the fact that the coal shipped into the other states was taxed for the same year prior to its disposition and the tax paid by the company, it would still be taxable by this state, there remains only the duty to direct judgment to be entered upon the reserved question in favor of the commonwealth and against the defendant company.

*Error assigned* was in entering judgment for plaintiff.

*M. E. Olmsted,* with him *A. C. Stamm,* for appellant.—The coal in question had clearly become part of the general mass of property of the states in which it was located and stored awaiting sale, and to whose residents it has since been sold. It was therefore clearly not taxable in Pennsylvania. The same property could not be taxable in two states at the same time. This property in other states was, as is shown by the evidence, included in the valuation of appellant's capital stock upon which a tax is charged in the account appealed from. It was not within the intention nor the power of the legislature to tax capital stock thus representing property outside the limits of the state: Com. v. Standard Oil Co., 101 Pa. 119; Com. v. American Dredging Co., 122 Pa. 386; Com. v. Montgomery Lead & Zinc Mining Co., 5 Pa. C. C. Rep. 89; Com. v. Penna. Coal Co., affirmed by the Supreme Court October, 1884, and not reported in state reports, but found in note to Com. v. Montgomery Lead & Zinc Mining Co., supra; Com. v. D. L. & W. R. R. Co., 145 Pa. 96.

*Hampton L. Carson,* attorney general, with him *Frederic W. Fleitz,* deputy attorney general, for appellee.—This case is ruled by Commonwealth v. Pennsylvania Coal Company, 197 Pa. 551.

OPINION BY MR. JUSTICE BROWN, July 9, 1903 :

This case is not distinguishable from Commonwealth v. Penna. Coal Co., 197 Pa. 551, and is controlled by it. Our attention is called to the fact that, in the present case, taxes were assessed and paid in the states where the coal was stored awaiting sale, and we are asked to regard the payment of those taxes as creating a distinction between the two cases. A sufficient answer to this is the court's finding that it does not appear whether they were paid for state, local or municipal purposes ; and it appears they were paid without contest.

One of the branches of this appellant's business is the mining and sale of coal. To enable it to sell this commodity in other states, some of its tangible property must be permanently in them, and so much as is so located and permanently serves the corporate purpose of the company, which is the sale of its coal, is not taxable here. But the coal itself is not such exempted property. As soon as it is mined here it enters into the value of the company's capital stock, upon the actual value of which the commonwealth is entitled to her tax. When shipped out of the state it is for the purpose of sale, and not for permanent storage. As fast as it is received at the wharves and in the yards, the company aims to turn it into money, which will pass at once into its treasury. " It is not a thing," as the learned judge below very properly said, " used in the prosecution of the business of the company." The business is prosecuted that the coal may be sold, and the exemption from taxation does not extend to the commodity itself, but is confined to such of the corporate property as must be used outside of the state to enable the company to conduct its business. This is the limit of exemption from taxation here, and the appellant's coal shipped to other states for sale was properly taxed by the commonwealth's officers.

Judgment affirmed.